IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| HOLIDAY HOSPITALITY FRANCHISING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>NORTHERN RIVERFRONT MARINA AND HOTEL, LLLP, et al.,<br><br>Defendants. | CIVIL ACTION FILE<br>NO. 1:21-CV-2584-TWT |

OPINION AND ORDER

This is a breach of contract action. It is before the Court on the Defendants' Motion to Dismiss [Doc. 3]. For the reasons set forth below, the Defendants' Motion to Dismiss [Doc. 3] is DENIED.

I.   Background

The Plaintiff, Holiday Hospitality Franchising, LLC ("HHFL"), develops and operates the Hotel Indigo® brand of hotels for IHG® Hotels and Resorts (Compl. ¶ 6.) On March 9, 2012, the Plaintiff entered into a New Development License Agreement ("the License Agreement") with the Defendant Northern Riverfront Marina and Hotel, LLLP ("NRMH") regarding the development and operation of a Hotel Indigo® location in Wilmington, North Carolina. (*Id.* ¶¶ 2, 7.) In essence, the License Agreement granted NRMH a license to design, build,

and ultimately operate a Hotel Indigo® location in exchange for a monthly licensing fee. (*Id.* ¶¶ 7–8, 11.) In addition to the License Agreement, the Plaintiff and the Defendant Charles Schoninger executed a Guaranty where Schoninger agreed to perform NRMH's obligations upon NRMH's default. (*Id.* ¶¶ 3, 17–18.)

The License Agreement included requirements that NRMH meet certain deadlines in constructing the hotel. (*Id.* ¶ 21.) In an April 18, 2012 amendment to the License Agreement, the following deadlines were set: October 14, 2012 to submit final design and construction plans; December 13, 2012 to begin construction, and February 6, 2014 to have the hotel ready to open. (*Id.*) However, in January 2013, NRMH requested an extension of these deadlines, and the Plaintiff agreed. (*Id.* ¶ 22.) Following this extension, NRMH submitted design and construction plans to the Plaintiff but failed to meet the other deadlines. (*Id.* ¶ 23.) What followed was a series of extensions agreed to by the Parties and subsequent failures on NRMH's part to meet these deadlines. (*Id.* ¶¶ 23–24.) Ultimately, the deadline to commence construction was extended to August 16, 2017, and the deadline to have the hotel ready to open was extended to February 5, 2019. (*Id.* ¶ 24.) NRMH failed to commence construction of the hotel by August 16, 2017. (*Id.* ¶ 25.) On March 15, 2019, the Plaintiff notified NRMH that it was in default under the License Agreement as a result of its failure to meet the construction deadline. (*Id.* ¶ 25.) Further, this notice informed NRMH that failure to cure this default by April 25, 2019 would result

in the License Agreement's termination. (*Id.*) NRMH did not begin construction by April 25, 2019, and as a result, the Plaintiff sent NRMH a Notice of Termination on May 21, 2019. (*Id.* ¶ 26.) NRMH never began construction on the hotel, and the Plaintiff deemed this failure a material breach of the License Agreement. (*Id.* ¶ 27.) As a result, the Plaintiff terminated the License Agreement on July 1, 2019. (*Id.*)[1]

The License Agreement included a liquidated damages provision, which stated:

> In the event Licensor terminates this License due to Licensee's breach of any of its obligations under the License . . . , Licensee shall pay to Licensor, as liquidated damages, a lump sum equal to the monthly average of all amounts that would have been payable to Licensor . . . assuming the Hotel had collected Gross Rooms Revenue based on the average daily revenue per available room for all hotels in the System for the previous twelve (12) months, as determined by Licensor, multiplied by the greater of (a) six (6) or (b) the number of full and partial months from the Term Commencement Date to the termination date of the License. Licensor and Licensee acknowledge and agree that it would be difficult to determine the injury caused to Licensor by termination of this License. Licensor and Licensee therefore intend and agree the above liquidated damages calculations to be a reasonable pre-estimate of Licensor's probable loss and not a penalty or in lieu of any other payment.

(*Id.* at 46–47.) Under this formula, the Plaintiff calculated the liquidated damages equaled $5,249,615.93. (*Id.* ¶ 29.) Further, under the Guaranty

---

[1] The Court notes a discrepancy between the termination date listed in the Complaint and the one listed in the Notice of Termination. (*Compare* Compl. ¶ 27, *with id.* at 87.) For the purposes of this Motion, the discrepancy is immaterial.

signed by Schoninger, the Plaintiff claims that the Defendants are jointly and severally liable for this amount. (*Id.* ¶ 30.) After the Defendants' failure to pay this amount, the Plaintiff sent a demand letter through counsel on April 9, 2021. (*Id.* ¶ 31.) The Plaintiff did not receive payment and filed suit in DeKalb County State Court. (*Id.* ¶ 32.) The Plaintiff alleged that the Defendants breached their respective agreements (Counts I & II) and further seeks attorneys' fees and costs pursuant to O.C.G.A. § 13-1-11 (Count III). The Defendants timely removed the action to this Court. (Notice of Removal.)[2]

## II.   Legal Standards

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v.*

---

[2] This case involves an LLC and an LLLP, both of which are considered citizens of any state in which any of its members or partners are citizens. *See Flintlock Constr. Svcs., LLC v. Well-Come Holdings, LLC*, 710 F.3d 1221, 1224 (11th Cir. 2013); *Rolling Greens MHP, L.P. v. Comcast SCH Holdings, L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004). "To sufficiently allege the citizenships of these unincorporated business entities, a party must list the citizenships of all the members of the limited liability company and all the partners of the limited partnership." *Id.* The Defendants sufficiently alleged the domicile of each member of the Plaintiff LLC and partner of the Defendant LLLP, and the requirements of diversity jurisdiction are satisfied. (*See* Notice of Removal ¶¶ 5–10.)

*Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994–95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

### III.   Discussion

The Defendants raise two main arguments in their Motion to Dismiss. First, the Defendants argue that the nearly four-year time period between the Plaintiff learning of the Defendants' failure to begin construction and the initiation of this suit constitutes waiver of its rights to recover damages here. (Defs.' Br. in Supp of Defs.' Mot. to Dismiss, at 10.) Second, the Defendants argue that even if the Plaintiff has not waived its rights, the liquidated damages sought operate as an unenforceable penalty that "does not reasonably estimate any probable loss suffered by [the Plaintiff]." (*Id.* at 14.) The Plaintiff mounts several counterarguments against the Defendants' claims, including

an argument that such determinations are inapposite at the motion-to-dismiss stage and that the Plaintiff did not allege actions in its Complaint sufficient to indicate waiver. (*See* Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss, at 10–23.) In addition, the Plaintiff claims that both the Eleventh Circuit and the Georgia Court of Appeals recently found this particular liquidated damages provision enforceable under Georgia law.³ (*Id.* at 23–25.) Because the Court finds that the Plaintiff did not waive its rights and that the Plaintiff has sufficiently pleaded a claim for liquidated damages under the relevant provision, the Defendants' Motion is denied.

### A. Waiver

Under Georgia law, waiver "is ordinarily an intentional relinquishment or abandonment of a known right or privilege, and the determination of whether there has been a valid waiver depends on the circumstances of each case." *Wiggins v. State*, 298 Ga. 366, 369 (2016) (internal quotations marks and citations omitted). Parties to a contract can waive contractual provisions for their own benefit, and such waivers can be demonstrated through conduct. *Greenberg Farrow Architecture, Inc. v. JMLS 1422, LLC*, 339 Ga. App. 325, 331 (2016). But as the Georgia Court of Appeals summarized:

> "[T]he law will not infer the waiver of an important contract right unless the waiver is *clear and unmistakable*. And because waiver is not favored under the law, the evidence relied upon to prove a

---

³ The License Agreement's choice-of-law provision indicates that Georgia law applies, and neither Party disputes its application here. (*See* Compl. at 45.)

> waiver must be so clearly indicative of an intent to relinquish a then known particular right or benefit as to exclude any other reasonable explanation. Indeed, all the attendant facts, taken together, must amount to an intentional relinquishment of a known right, in order that a waiver may exist. The burden of proof lies with the party asserting waiver.

*Id.* (internal punctuation and quotation marks omitted). Waiver is generally a question for the jury except in situations where "the facts and circumstances essential to the question are clearly established." *Id.* at 331–32. "A party's protracted silence, or unreasonable delay in making protest, can raise a fact issue as to whether she has waived a contractual right." *AAF-McQuay, Inc. v. Willis*, 308 Ga. App. 203, 217–18 (2011); *see also Eckerd Corp. v. Alterman Props., Ltd.*, 264 Ga. App. 72, 75 (2003) ("[W]here the only evidence of an intention to waive is what a party does or forbears to do, there is no waiver unless his acts or omissions to act are so manifestly consistent with an intent to relinquish a then-known particular right or benefit that no other reasonable explanation of his conduct is possible." (internal quotation marks omitted)).

At this stage in the proceedings, the Defendants have not met their burden in establishing the Plaintiff's waiver of its contractual rights. The Defendants argue that "[b]y extending the construction milestones for over 7 years, by sitting on its termination rights for nearly 2 years after the last agreed-upon ground-breaking milestone came and went, and by failing to calculate and make any demand for payment of liquidated damages for yet another almost 2 years following termination," the Plaintiff's conduct

constitutes a clear waiver of its rights. (Defs.' Br. in Supp. of Defs.' Mot. to Dismiss, at 3.) But as the Plaintiff notes, the "Defendants have not identified any factual allegations in" the Complaint that would indicate waiver beyond mere inaction. (Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss, at 17.) While waiver predicated on silence or inaction is possible, such a determination is one for the jury. *AAF-McQuay*, 308 Ga. App. at 217–18. As a result, the Court cannot conclude the Plaintiff waived its rights at this time, and the Defendants' waiver argument fails.

### B. Reasonableness of the Liquidated Damages Provision

The Defendants raise two arguments in support of their contention that the License Agreement's liquidated damages provision is unenforceable under Georgia law. First, the Defendants fault the time period—from the time of execution to the date of the final construction deadline—as unreasonably excessive. (Defs.' Br. in Supp. of Defs.' Mot. to Dismiss, at 17–19.) Second, the Defendants argue that using all Hotel Indigo® locations in the calculation of the average daily revenue represents an unreasonable estimate of potential losses. (*Id.* at 19–20.) The Plaintiff responds by citing two recent cases upholding an identical provision in similar cases, and the Defendants attempt to distinguish these cases in their Reply. (Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss, at 23–25; Defs.' Reply Br. in Supp. of Defs.' Mot. to Dismiss, at 12–16.)

In Georgia, "[i]f the parties agree in their contract what the damages for

8

a breach shall be, they are said to be liquidated and, unless the agreement violates some principle of law, the parties are bound thereby." O.C.G.A. § 13-6-7. "[Liquidated damages] provisions are enforceable if (1) the injury caused by the breach is difficult or impossible to estimate accurately; (2) the parties intended to provide for damages rather than a penalty; and (3) the sum stipulated is a reasonable pre-estimate of the probable loss." *Mariner Health Care Mgmt. Co. v. Sovereign Healthcare, LLC*, 306 Ga. App. 873, 874–75 (2010). "Determining whether a liquidated damages provision is enforceable is a question of law for the court, which necessarily requires the resolution of questions of fact." *National Svc. Indus., Inc. v. Here to Serve Restaurants, Inc.*, 304 Ga. App. 98, 100 (2010). The required factual inquiry must pertain to the three elements of enforceability above. *Liberty Life Ins. Co. v. Thomas B. Hartley Constr. Co.*, 258 Ga. 808, 809 (1989).

Much like the Court's waiver analysis, the ruling sought by the Defendants here appears premature. While the reasonableness of the liquidated damages provision represents a question of law for the Court, that determination rests upon a factual inquiry. At the motion-to-dismiss stage, those facts come from the Complaint. Thus, if the Complaint sufficiently alleges that the three elements of enforceability are present here, the Plaintiff can continue to pursue its liquidated damages claim. Here, the Plaintiff has carried its burden, as the License Agreement's liquidated damages provision addressed each of the required elements:

9

> Licensor and Licensee acknowledge and agree that it would be difficult to determine the injury caused to [the Plaintiff] by termination of this License. Licensor and Licensee therefore intend and agree the above liquidated damages calculations to be a reasonable pre-estimate of Licensor's probable loss and not a penalty or in lieu of any other payment.

(Compl. at 47.) This provision satisfies the elements of enforceability required at this stage: an acknowledgement of the difficulty in estimating the damages; the intent to craft a damages remedy instead of a penalty; and a stipulation that the calculated amount is a reasonable pre-estimate of those damages. At the motion-to-dismiss stage, the Court will not reject well-pleaded facts and plain contractual language indicating the elements have been satisfied. This is especially true in light of the Plaintiff's citation to recent Eleventh Circuit and Georgia Court of Appeals decisions finding this exact provision reasonable under Georgia law. *See Crown Series, LLC v. Holiday Hosp. Franchising, LLC*, 357 Ga. App. 523, 530 (2020) ("Put simply, the parties agreed—and we have so found—that the liquidated damages provision was a 'reasonable pre-estimate of [the Plaintiff's] probable loss[.]'"); *Holiday Hosp. Franchising, LLC v. Oakbrook Realty & Invs., LLC*, 817 F. App'x 694, 699–700 (11th Cir. 2020) (affirming a lower court decision that the Plaintiff "had adequately supported its claim for liquidated damages"). Though this ruling does not foreclose the possibility that these arguments might succeed later, the Defendants have failed to counter the sufficiency of the Plaintiff's pleadings at this stage.

### IV. Conclusion

For the reasons set forth above, the Defendants' Motion to Dismiss [Doc. 3] is DENIED.

SO ORDERED, this 26 day of August, 2021.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge